UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROY RAWALJI,<br><br>                                    Plaintiff,<br><br>v.<br><br>BELFOR USA GROUP, INC., et al.,<br><br>                                    Defendants. | Case No.:  25-cv-02385-AJB-BLM<br><br>**ORDER GRANTING MOTION FOR REMAND** |

Before the Court is Plaintiff Roy Rawalji's ("Rawalji") Motion for Remand. (Doc. No. 12.) The motion is fully briefed. (Doc. Nos. 12; 16; 19.) For the reasons set forth below, the Court **GRANTS** Rawalji's motion.

I.      **BACKGROUND**

A.      **Factual Background**

In 2022, Defendant Trever Austin ("Austin") interviewed Rawalji for a job on behalf of Defendant BELFOR USA, Group, Inc. ("BELFOR"). (Doc. No. 12 at 3.) At that time, Austin was a regional manager for BELFOR. (Doc. No. 13 ¶ 4; *see also* Doc. No. 16 at 3.) Austin onboarded Rawalji and informed him of the job responsibilities and compensation. (Doc. No. 12 at 3; *see also* Doc. No. 16-2 ¶ 7.) During negotiations, Rawalji expressed he

1

wanted more pay and fewer hours, which Austin denied. (Doc. No. 12 at 3–4; *see also* Doc. No. 16 at 3.) Austin determined Rawalji's final compensation and submitted this information to a central payroll center. (Doc. No. 12 at 4.) BELFOR employed Rawalji as a "Director of Emergency Services," and Rawalji remained in that role until his termination in August 2024. (Doc. No. 13 ¶ 5; *see also* Doc. No. 16 at 3–4.)

### B.    Procedural Background

On June 26, 2025, Rawalji filed this action in San Diego County Superior Court against: (1) Defendant BELFOR, (2) Defendant Austin, and (3) Doe Defendants 1–20, for violations of the California Labor Code, Business and Professions Code, and Industrial Welfare Commissions Wage Orders. (Doc. No. 1-2 at 8–9, 11–23 ¶¶ 9–11, 18–84.) Rawalji alleges that Defendants regularly prohibited him from taking 30-minute uninterrupted meal breaks and 10-minute rest break periods. (*Id*. at 10 ¶¶ 14–15.) Rawalji also asserts that Defendants misclassified him as a "salaried exempt" employee and required him to work overtime without receiving overtime wages. (*Id*. at 10 ¶ 16.) Lastly, Rawalji avers that Defendants denied him premium pay for the days he worked under Defendants' unlawful employment practices. (*Id*. at 10 ¶ 17.)

Rawalji served Defendants with summons and copies of the complaint in August 2025. (Doc. No. 1 at 3.) On September 12, 2025, Defendants removed the action to this Court. (*See id*.) Defendants claim this Court possesses diversity jurisdiction over the matter because the parties are diverse, even though Rawalji and Austin are both California citizens, and the amount in controversy is over $75,000. (*Id*. at 4–20.) Defendants contend that Rawalji fraudulently joined Austin in this action because Austin is not a managing agent under California Labor Code section 558.1 (*Id*. at 6–8.)

On October 9, 2025, Rawalji moved for remand. (Doc. No. 12.) Rawalji argues that there is no diversity jurisdiction and Defendants' fraudulent joinder argument fails. (*Id*. at 3.) Specifically, Rawalji claims Austin can be sued in his individual capacity because California law allows for individual liability for any person who violates or causes a violation of California wage and hour laws. (*Id*. (citing Cal. Lab. Code § 558.1).) Rawalji

25-cv-02385-AJB-BLM

indicates Austin qualifies as a managing agent under California Labor Code section 558.1 since he "had broad discretionary powers and exercised substantial authority directly implementing and overseeing the illegal pay policies applicable to Plaintiff." (*Id*.) Rawalji adds Austin managed millions of dollars in revenue and oversaw multiple offices in Los Angeles, San Diego, and Riverside. (*Id*. at 4.)

Defendants filed an opposition on October 23, 2025. (Doc. No. 16.) Defendants respond that Austin does not qualify as a managing agent because he had no input into human resources or payroll policies, nor did he have the independent ability to hire or fire individuals. (*Id*. at 7–10.)

## II.     LEGAL STANDARD

The removal jurisdiction of the federal courts derives from the statutory authorization of Congress. *Libhart v. Santa Monica Dairy Co.*, 592 F.2d 1062, 1064 (9th Cir. 1979). Defendants may remove an action to federal court pursuant to 28 U.S.C. § 1441 when the suit (1) presents a federal question and/or (2) is between citizens of different states and involves an amount in controversy that exceeds $75,000. *See* 28 U.S.C. §§ 1331, 1332(a)(1), 1441(a)–(b).

"Jurisdiction founded on 28 U.S.C. § 1332 requires that parties be in complete diversity and the amount in controversy exceed $75,000." *Matheson v. Progressive Specialty Ins. Co.*, 319 F.3d 1089, 1090 (9th Cir. 2003); *see also* 28 U.S.C. § 1332(a). Complete diversity requires that each plaintiff's citizenship is different from each defendant's citizenship. *Caterpillar Inc. v. Lewis*, 519 U.S. 61, 68 (1996). The Ninth Circuit "strictly construe[s] the removal statute against removal jurisdiction." *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992) (citations omitted). "Federal jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance." *Id*. (citation omitted). "The 'strong presumption' against removal jurisdiction means that the defendant always has the burden of establishing that removal is proper." *Id*. (citations omitted).

25-cv-02385-AJB-BLM

## III.   DISCUSSION

At issue is whether Rawalji fraudulently joined Austin to preclude complete diversity amongst the parties.

"In determining whether there is complete diversity, district courts may disregard the citizenship of a non-diverse defendant who has been fraudulently joined." *Grancare, LLC v. Thrower by & through Mills*, 889 F.3d 543, 548 (9th Cir. 2018) (citations omitted). It is well-settled law that "fraudulently joined defendants will not defeat removal on diversity grounds." *Ritchey v. Upjohn Drug Co.*, 139 F.3d 1313, 1318 (9th Cir. 1998) (citations omitted). A defendant can show an individual is fraudulently joined if the individual "cannot be liable on any theory." *Id*. A joinder is fraudulent if a plaintiff fails to state a claim against the non-diverse defendant, and "and the failure is obvious according to the settled rules of the state." *Hamilton Materials, Inc. v. Dow Chem. Corp.*, 494 F.3d 1203, 1206 (9th Cir. 2007) (citation omitted). There is a general presumption against finding fraudulent joinder, and thus, a defendant invoking federal court diversity jurisdiction on that basis "bears a 'heavy burden.'" *Grancare*, 889 F.3d at 548 (citation omitted). The fraudulent joinder "must be proven by clear and convincing evidence." *Hamilton Materials*, 494 F.3d at 1206 (citation omitted). The court must find that a defendant was properly joined and remand the case to state court if there is a "possibility that a state court would find that the complaint states a cause of action against any of the non-diverse defendants." *Grancare*, 889 F.3d at 549 (cleaned up).

California law authorizes plaintiffs to sue "managing agents" for violations of minimum wage and hour regulations. Cal. Lab. Code § 558.1. Managing agents are "corporate employees who exercise substantial independent authority and judgment in their corporate decision-making so that their decisions ultimately determine corporate policy." *White v. Ultramar, Inc.*, 21 Cal. 4th 563, 566–67 (1999). Corporate policy affects "a substantial portion of the company" and is "the type likely to come to the attention of corporate leadership." *Roby v. McKesson Corp.*, 47 Cal. 4th 686, 715 (2009). An inquiry

25-cv-02385-AJB-BLM

into the scope of a corporate employee's discretion and authority is "a question of fact for decision on a case-by-case basis." *White*, 21 Cal. 4th at 567.

Defendants claim Austin is not a managing agent. (Doc. No. 1 at 6–8.) Defendants explain that as a regional manager, Austin's duties included implementing BELFOR practices and protocols, analyzing monthly financial metrics, identifying new marketing and revenue opportunities, and overseeing financial planning and sales margins. (*Id*. at 8.) Defendants claim that Austin's responsibilities do not involve setting corporate policy and consequently do not make him a managing agent of BELFOR. (*Id*.)

Contrary to Defendants' arguments, Austin may qualify as a managing agent.

The Ninth Circuit has determined that evidence that an individual holds high ranking roles, supervises a large geographic area, governs company operations and sales, and/or makes decisions that affect corporate policy could suffice to make them a managing agent. *See, e.g.*, *Mitri v. Walgreen Co.*, 566 F. App'x 606, 607 (9th Cir. Apr. 1, 2014). In *Mitri*, the Circuit held that evidence that an employee "occupied a position four levels below the president of Walgreens, had responsibility for a market including four states, coached store managers across that jurisdiction on improving sales and profits, made personnel decisions with apparent authority that might implicate company-wide policies, approved of decisions contrary to corporate policy, and was treated by other employees as having substantial authority" could lead to a reasonable inference that the employee was a managing agent. *Id*. Similarly, in *Marlo v. United Parcel Service, Inc.*, the Circuit held that evidence that an employee was "the highest ranking supervisor in a 7,000-employee district" and oversaw supervisors and employees in various departments including "operations, sales, marketing, engineering, automotive, accounting, finance and human resources, and labor relations" was sufficient to support a finding that the employee was a managing agent. 600 F. App'x 551, 551 (9th Cir. Apr. 23, 2015). The Circuit further explained that a jury could reasonably conclude that the employee's "decision to terminate [a plaintiff] was a policymaking decision aimed at protecting the company 'culture,'" making the employee a managing agent. *Id.* at 551–52.

California courts have identified employees as managing agents under similar facts. In *Major v. Western Home Ins. Co.*, for example, the court held that a claims adjuster for an insurance company could be a managing agent because she "managed 35 employees in an office in Minnesota that handled claims as far away as California, oversaw the claims operation, supervised lower ranking supervisors, trained adjusters, worked on the budget, supervised the handling of certain files, and authorized payment of [insurance] benefits." 169 Cal. App. 4th 1197, 1220 (2009). Likewise in *White*, the court concluded that an employee qualified as a managing agent because the employee's responsibilities included "managing numerous stores on a daily basis and making significant decisions affecting both store and company policy." *White*, 21 Cal. 4th at 577. Specifically, the court determined that the employee's decision to fire the plaintiff for testifying at an unemployment hearing provided sufficient basis to identify the employee as a managing agent. *Id*. This was because the termination of the plaintiff was an exercise of "substantial discretionary authority over decisions that ultimately determined corporate policy in a most crucial aspect of [the employer's] business." *Id.*

Here, Austin's high-ranking role, oversight of offices in multiple cities, and governance over company financials indicate that he may be a managing agent under California law. From January 2020 to 2022, Austin served as the general manager of the Los Angeles office. (Doc No. 16-2 ¶ 3.) Later, from the fourth quarter of 2022 through the end of 2023, he served as an interim regional manager for BELFOR. (*Id*.) This role involved oversight of three offices in Los Angeles, San Diego, and Riverside. (*Id*.) Austin's responsibilities as an interim regional manager included "implementing BELFOR practices and protocols, analyzing monthly financial metrics submitted by the general manager at each office within [his] region, identifying new marketing and revenue opportunities, overseeing budgeting and financial planning, and monitoring sales and revenue margins." (*Id*. ¶ 5.) Austin also apparently had the ability to terminate employees and to "provide advice or suggestions regarding acquisitions" to the executive team. (Doc. No. 16-1 ¶¶ 8, 10.)

25-cv-02385-AJB-BLM

These responsibilities are similar to the ones at issue in *Marlo*. Like the relevant defendant there, Austin supervised offices in a large geographic area and multiple financial departments. (*Compare* 600 F. App'x at 551, *with* Doc. No.16-2 ¶¶ 3, 5.) Austin also had the ability to help "maintain[] a company 'culture'" by terminating employees or making recommendations to the executive team. (*Compare Marlo*, 600 F. App'x at 551–52, *with* Doc. No. 16-1 ¶¶ 8, 10.) Austin's responsibilities are also similar to the ones at issue in *Mitri*. Like the *Mitri* defendant, Austin held high-ranking roles as a general manager and a regional manager, supervised offices in multiple cities, and oversaw sales and profits. (*Compare* 566 F. App'x at 607, *with* Doc. No. 16-2 ¶¶ 3, 5.)

Defendants' attempts to minimize Austin's responsibilities are unavailing. For instance, Defendants contend that "Austin did not have the independent ability to hire or fire any of the individuals in the San Diego office." (Doc. No. 16 at 9.) But this contention is contradicted by their own statement that "Regional Managers . . . technically have the ability to fire an employee." (Doc. No 16-1 ¶ 8.) In any event, Defendants' focus on whether Austin exercised any "independent authority over employment terms" is too myopic. (*See* Doc. No. 16 at 10.) Rather, the relevant issue is whether Austin had any authority over "policies that affect a substantial portion of the company and that are the type likely to come to the attention of corporate leadership." *Roby*, 47 Cal. 4th at 714–15. Defendants admit that Austin could "provide advice or suggestions regarding acquisitions." (Doc. No. 16-1 ¶ 10.) Such recommendations seem to address or relate to policies "that are the type likely to come to the attention of corporate leadership." *Roby*, 47 Cal. 4th at 714–15.

For these reasons, it appears that there is a "possibility" that Rawalji can state a cause of action against Austin. *Grancare*, 889 F.3d at 549. Defendants have thus failed to show that Rawalji fraudulently joined Austin. *Id.* Moreover, any doubt regarding Rawalji's ability to state a cause of action against Austin weighs in favor of remand. *Gaus*, 980 F.2d at 566.

25-cv-02385-AJB-BLM

## IV.    CONCLUSION

Defendants have failed to carry their burden to show that Rawalji fraudulently joined Austin as a defendant in this action. In turn, Defendants have also failed to show that their removal of this action to federal court was proper. Accordingly, the Court **GRANTS** Rawalji's motion and **REMANDS** the action to San Diego County Superior Court.

**IT IS SO ORDERED.**

Dated:  April 23, 2026

I hereby attest and certify on **Apr 23, 2026** that the foregoing document is a full, true and correct copy of the original on file in my office and in my legal custody.

Clerk, U.S. District Court
Southern District of California

By: **s/ M. Quinata**
    Deputy

Hon. Anthony J. Battaglia
United States District Judge



25-cv-02385-AJB-BLM